UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES of America

    -against-

COLLIN FELIX,

                   Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**15-CR-414 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendant Collin Felix's (alternatively, "Defendant" or "Felix") motion to suppress physical evidence found in his possession by the police on July 16, 2015. (See Decl. of Michael K. Schneider in Supp. of Mot. to Suppress ("Schneider Decl.") (Dkt. 18-1); Mem. in Supp. of Mot. to Suppress ("Def.'s Mem.") (Dkt. 27).) The court held a suppression hearing on Felix's motion on January 15, 2016. (See Tr. (Dkt. 28).) The sole issue in dispute is whether Officer Allen witnessed Felix in possession of the gun, prior to stopping and frisking him. (See Def.'s Mem. at 1 ("At a hearing held before this Court on January 15, 2016, a police officer testified that, at about 1:00 a.m. on the morning of July 17, 2016, he saw Mr. Felix inexplicably pull a small handgun out of the pocket of his jeans and place it in the pocket of his basketball shorts. <u>If the Court accepts this testimony as credible, then the police officer was justified in stopping and searching Mr. Felix</u>." (emphasis added)); Gov't's Opp'n Mem. (Dkt. 29) at 1 ("<u>The sole issue in dispute</u> is whether, in the early morning hours of July 17, 2015, the defendant was observed by New York City Police Department [] officers with a firearm at the corner of Reid Avenue and Madison Street in Brooklyn New York." (emphasis added)).) For the reasons explained below, the court finds that Officer Allen observed Felix in possession of the firearm; thus, Felix's motion to suppress is DENIED.

1

# I. BACKGROUND

### A. Facts[1]

On the night of July 16, 2015, New York Police Department ("NYPD") Officers Allen, Verdesoto, and O'Brien, as well as Sergeant DiPreta, were on patrol in an unmarked police vehicle. (Tr. at 13:1-11.) Each officer wore plain clothes. (Id. at 14:6-9.) Officer Verdesoto was driving, Officer O'Brien was sitting in the front passenger seat, Officer Allen was sitting behind Officer Verdesoto, and Sergeant DiPreta was sitting behind Officer O'Brien. (Id. at 14:10-21.) They drove slowly, maintaining a speed somewhere between 8 and 15 miles per hour. (Id. at 15:2, 65:19, 92:24.) The night was clear. (Id. at 15:5-11.) As they drove, the officers kept their heads "on a swivel" scanning for suspicious activity in all directions. (Id. at 15:15-16:3, 66:15-18.)

At around 1 a.m., Officer Allen observed Felix about 30 feet away walking northbound on Reid Avenue toward the southeast corner of Reid and Madison Street. (Id. 19:20-20:7.) The corner was well lit. (Id. at 18:5-23, 23:14-20, 24:9-15, 25:20-26:4, 68:7-10, 69:3-8, 94:9-95:2.) Allen observed that Felix was wearing a white t-shirt and jeans that hung around his groin area. (Id. at 20:11-21:19.) When Felix reached the corner, he turned to face westbound, looking across Reid Avenue. (Id. at 22:1-4.) At this point, the police car was about one car length away from Felix. (Id. at 26:22-24.)

The parties sharply contest what occurred from this point on,. Officer Allen testified:

> At that point, I observed the defendant, he was facing westbound. And at that point he, with his right hand into his right-side jean pocket, removed the firearm. And at that point since, you know, he was right directly under the streetlight, the firearm had a chrome slide which, you know, reflected off that. And then at that point he

---

[1] The parties dispute many of the key facts. Where necessary, the court has made factual findings. See Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.").

2

> took it out and then placed it into again on his right side, but he was
> wearing basketball shorts underneath his jeans. And the basketball
> shorts were around his waist. And then he placed it into the right
> side of his basketball shorts' pocket.

(Id. at 27:10-19.) No other officer saw Felix transfer the gun from his jeans to his shorts. (Id. at 70:8-10, 95:25-96:2) Felix contests Allen's account. Although Felix did not testify on his own behalf at the suppression hearing and accordingly, the court was unable to assess his credibility under cross examination, he did provide an affidavit. In the affidavit, he states, "The gun was not visible to anyone as I walked. I had not taken the gun out of my pocket prior to being stopped." (Aff. of Collin Felix ("Felix Aff.") (Dkt. 18-2).)

Officer Allen alerted the other officers to the purported presence of a gun. (Id. at 70:11-17, 96:7-8.) The officers stopped their car at the southwest corner of Reid and Madison. (Id. at 96:11-14.) Officer Allen approached Felix and ordered him to stop. (Id. at 30:25-31:5.) Sergeant DiPreta and Officer O'Brien approached two individuals on the other side of the street and quickly ascertained that they had no connection to Felix. (Id. at 97:2-11.) Sergeant DiPreta and Officer O'Brien then returned to assist Allen. (Id. at 88:11-16, 105:8-14.)

After Felix was stopped, Allen put his hand where he had seen the gun. (Id. at 33:14-25.) The officers recovered a gun and ammunition from Defendant. (Id. at 34:4-9.)

### B. Procedural History

On August 20, 2015, Felix was charged in a one count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (See Indictment (Dkt. 12).) On November 9, 2015, Felix moved to suppress the gun and ammunition. (Mot. to Suppress (Dkt. 18).) On December 9, 2015, the Government responded and suggested that a hearing was

3

needed. (Gov't's Ltr.-Resp. (Dkt. 19).) The court held a hearing on January 15, 2016. The parties completed their post-hearing briefing on April 1, 2016.

## II. LEGAL STANDARD

The parties do not dispute the relevant legal framework. The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. Generally, evidence that is seized pursuant to an unreasonable search or derived from such a search must be suppressed. James v. Illinois, 493 U.S. 307, 311-12 (1990). "While searches and seizures conducted without a warrant are presumptively unreasonable, several exceptions to the warrant requirement have been fashioned when circumstances demand an immediate police response." United States v. McCargo, 464 F.3d 192, 196 (2d Cir. 2006) (internal citations omitted).

"One such exception was recognized in Terry v. Ohio, 392 U.S. 1 (1968), which held that 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot,' the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." Minnesota v. Dickerson, 508 U.S. 366, 372-73 (1993) (alteration removed). Thus,

> Terry established the legitimacy of an investigatory stop in situations where [the police] may lack probable cause for an arrest. When the stop is justified by suspicion (reasonably grounded, but short of probable cause) that criminal activity is afoot, . . . the police officer must be positioned to act instantly on reasonable suspicion that the persons temporarily detained are armed and dangerous. Recognizing that a limited search of outer clothing for weapons serves to protect both the officer and the public, [Terry] held the patdown reasonable under the Fourth Amendment.

Arizona v. Johnson, 555 U.S. 323, 330 (2009).

"A reasonable basis requires more than a hunch. Rather, it demands specific and articulable facts which, taken together with rational inferences from those facts provide detaining

4

officers with a particularized and objective basis for suspecting wrongdoing." United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014) (internal citations and quotation marks omitted), cert. denied, 135 S. Ct. 705 (2014).

## III. DISCUSSION

If Officer Allen saw Felix remove the gun from his pants, he would have had a reasonable suspicion sufficient to approach, pat down, and briefly question Felix. See Pennsylvania v. Mimms, 434 U.S. 106, 112, (1977) ("The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of reasonable caution would likely have conducted the pat down." (internal quotation marks and citations omitted)); United States v. Williams, No. 13-CR-226 (KBF), 2013 WL 4477027, at *2 (S.D.N.Y. Aug. 14, 2013) ("Officer Manning's testimony that he believed he saw a firearm protruding from Williams' waistband when he first approached the Officers in the vehicle—before the chase—is itself sufficient to support the lawfulness of the stop, frisk, and arrest."). Thus, the only question before the court is whether to credit Allen or Felix's testimony.

As a preliminary matter, the court notes the difficulty of this case and cases like it. See Floyd v. City of New York, 959 F. Supp. 2d 540, 562 (S.D.N.Y. 2013) ("In making these decisions I note that evaluating a stop in hindsight is an imperfect procedure. Because there is no contemporaneous recording of the stop (such as could be achieved through the use of a body-worn camera), I am relegated to finding facts based on the often conflicting testimony of eyewitnesses."). Allen, although he was accompanied by three other officers, is the only one who claims to have seen Felix with a gun prior to the stop. Felix disputes that Allen could have seen him with a gun at all. No other witnesses are available who could shed light on whether

5

Allen or Felix is telling the truth. Nonetheless, for the reasons stated below, the court finds that Allen's testimony is credible.

First, the court had occasion to witness Officer Allen testify and found him credible. Specifically, Allen was able persuasively to explain how, from his vantage point in the police car he could have seen Felix transfer the firearm from his jeans to his shorts. (See Tr. at 28:24-29:4, 52:6-53:4, 59:18-60:15.)

Second, Allen's description of events is consistent with the physical properties of the seized gun. Allen testified that "at that point since, you know, he was right directly under the streetlight, the firearm had a chrome slide which, you know, reflected off that." (Id. at 27:12-15.) At the suppression hearing, the court had occasion to observe the physical properties of the gun. It is true that the chrome slide likely would have caused a reflection had the gun been exposed under a street light. Thus, the court concludes that the physical properties of the gun bolster Allen's credibility.

Third, each officer's description of the events immediately following Allen's stop of Felix is consistent with Allen having seen a gun prior to the stop. Allen testified that when the car stopped, he immediately apprehended Felix and "placed my hand and I felt where, you know, I had seen the gun, [at which point] the defendant stated, 'I found it.'" (Tr. at 33:17:19.) Thus, Allen describes a fairly quick time period between apprehending Felix and seizing the gun. A quick encounter is consistent with both DiPreta and O'Brien's accounts. Both DiPreta and O'Brien testified that upon stopping, they briefly approached two individuals before returning to where Allen and Defendant were standing. (See, e.g., id. at 70:24-71:10.) By the time DiPreta and O'Brien returned, Allen was already in the process of detaining Felix. (See, e.g., id. 105:19-22.) This short time period between Allen stopping Felix, and Allen detaining Felix,

6

suggests that Allen quickly located the gun. Of course, Allen would have been more likely to quickly locate the gun had he seen Felix handling the gun.

Fourth, both DiPreta and O'Brien's descriptions of Allen exclaiming "gun" suggest that Allen really saw the gun. Both DiPreta and O'Brien testified that Allen stated "gun" to the other officers with Felix in view. (Tr. at 70:11-17 (DiPreta), 96:3-14 (O'Brien).) If, as Felix suggests, "these officers happened upon three men walking on the street in Brooklyn at 1:00 in the morning and decided to perform an unjustified stop and frisk of the men," (Def.'s Mem. at 5), it would be odd for Allen, and Allen alone, to say "gun" before initiating the stop. That is, if each officer knowingly and intentionally set out to perform an unlawful stop and frisk, why would Allen make any statement at all before the car stopped? The court thinks it unlikely that he would. True, it is possible that all three officers could have conspired to justify an unlawful stop, and accordingly, concocted a story after the fact to justify their actions. However, the court saw no evidence of such a grand conspiracy at the hearing. Instead, under repeated cross-examination, the officers consistently told the same story—a story consistent with Allen having seen a gun. Thus, the other officers' testimony supports Allen's credibility.

Fifth, Allen's testimony is consistent with the testimony of DiPreta and O'Brien in other ways, suggesting trustworthiness. Although the other officers did not see the critical moment when Felix transferred his gun, Allen's testimony matched DiPreta and O'Brien's in several of important ways. For example, each officer testified that visibility was clear at the time when Allen saw the gun. (Tr. at 65:22-25 (DiPreta), 93:2-5 (O'Brien).)

Sixth, the court finds Defendant's attacks on the officers' credibility to be without merit. Defendant first argues that he would not have displayed the gun in front of a police car. (Def.'s

7

Mem. at 4.) But there is no evidence that Felix perceived the vehicle to be a police car, or indeed, even saw the vehicle at all. Thus, the court has no trouble rejecting this challenge.

Defendant next contends that "there is no explanation for why [Felix] would display a gun in plain view of anyone driving up Reid Ave." (Def.'s Mem. at 4.) However, Officer Allen has suggested a perfectly plausible reason for why Felix would have displayed the gun; namely, to make it more accessible. Office Allen explained:

> Q: Based on your training and experience, why might an individual shift a gun from a pants' pocket to a shorts' pocket?
>
> A: At that point it would be if the pants are being worn below the waistline, you know, it would be the, you know, constrictness [sic] of the belt in order to hold the pants up. Therefore, it would tighten the pocket of the garment. So in my opinion it would be accessibility instead of if they're lower, you would have to lower your right side in order to, you know, retrieve it. But if your basketball shorts or shorts were being worn waist high, and it's also a very loser [sic] garment than the jeans being constricted. So if you had it in a looser garment higher up, it would be for accessibility purposes.

(Tr. at 29:21-30:9.) Accordingly, the court finds it plausible that Felix would have had reason to expose the gun.

Defendant next argues that "the pistol is very small and easily hidden by a man's hand. Yet Officer Allen testified that he was able to identify not only the slide of a firearm, but also the ivory-colored handle." (Def.'s Mem. at 4.) But at the hearing, Allen not only explained how, from his vantage point, he could have seen the pistol, he also displayed how the pistol was held and how he could have seen it. (See Tr. at 28:24-29:4, 52:6-53:4, 59:18-60:15.) The court was able to witness this demonstration, and, from it, the court determines that the pistol, including the handle, could have been visible to Allen.

Next, Defendant claims that it is inexplicable that DiPreta and O'Brien did not see the gun. (Def.'s Mem at 4-5.) It is not. As explained above, both DiPreta and O'Brien briefly turned their attention to two individuals walking on the opposite side of the street from Felix. (See, e.g., id. at 70:24-71:10.) Allen testified that Felix only briefly exposed the gun as he transferred it from his jeans to his shorts. (Id. at 27:10-19.) It is entirely possible that if DiPreta and O'Brien were briefly occupied looking at individuals on the other side of the street, they would not have seen Felix expose the gun.

Defendant further maintains that "though the Sergeant DiPreta and Officer O'Brien both testified that Officer Allen alerted them to a man with a gun, both directed their attention to two other men after getting out of the unmarked car. This would appear to be an unusual response to what would have been a dangerous situation [] if Officer Allen had seen Mr. Felix with a firearm." (Def.'s Mem. at 5.) To the contrary, both DiPreta and O'Brien gave perfectly rational explanations for why they did not immediately approach Felix. DiPreta explained:

> Q: And why did you approach them?
>
> A: Originally, I was not aware if they knew the defendant or were they possibly involved in anything that just transpired. And it's definitely for our safety. We don't want to turn your back on somebody that you don't know what their role is in this whole incident.

(Tr. at 71:11-16.) Officer O'Brien offered a similar explanation:

> Q: Okay. What did you do after the car stopped?
>
> A: When the car was catty-cornered on the corner at the intersection, the two individuals that were walking up on the west side, they were right in front of myself and Sergeant DiPreta pretty much. They were very close to the northwest corner of that intersection.
>
> And right when we abruptly stopped and exited the vehicle, they seemed—we took a couple steps in their direction and they seemed confused. They didn't seem like

9

> they knew what was going on. And we came around the front of the vehicle to assist Officer Allen.

(Id. at 97:1-11.) The court finds it highly probable that because the two individuals would have been close to DiPreta and O'Brien when the police car came to a stop, the officers would at least have done a cursory investigation of the individuals' potential involvement in the situation before turning their attention to Felix. Thus, the court does not find that DiPreta and O'Brien's actions undermine Allen's testimony.

Finally, Defendant argues that what occurred to Mr. Felix was an unlawful stop and frisk. (Def.'s Mem. at 5.) He bolsters this argument by citing to United States v. Williams, 09-CR-590 (FB), where the court suppressed a gun seized by Officer O'Brien. (Id.; see also Williams Decision (Gov't's Mot. in Limine (Dkt. 21), Ex. B (Dkt. 21-2)).)

The court finds Williams unhelpful. If Defendant relies on Williams to support the general proposition that sometimes the police will conduct an unlawful search; the citation is unnecessary. Indeed, the court is well aware that, from time to time, police may not have the requisite evidence to carry out a valid search. See generally Floyd, 959 F. Supp. 2d 540 (discussing evidence that New York City had an unlawful stop-and-frisk policy). However, that is not the issue here. The question in this case is whether this specific police officer (Allen) had sufficient grounds to stop this specific defendant (Felix). As explained above, the court concludes that Allen did have sufficient grounds.

If, on the other hand, Defendant relies on Williams to show that O'Brien is not credible, the effort fails as well. The court had an opportunity to view O'Brien's testimony first hand, and the court found him to be credible. More important, even if the court were to discount O'Brien's testimony, the result would not change. The key testimony in this case is

Allen's, and, as explained above, the court finds Allen to be credible. Therefore, the court concludes that Allen had probable cause to stop and frisk Felix.

## IV. CONCLUSION

For the reasons stated above, the court finds that Allen had probable cause to stop and frisk Felix. Accordingly, the gun and ammunition found during the stop and frisk were lawfully obtained and will not be suppressed. Thus, Defendant's motion to suppress is DENIED. The parties are DIRECTED to contact the court's Deputy within seven (7) days of the entry of this Memorandum and Order to set a trial date.

SO ORDERED.

Dated: Brooklyn, New York
April 8, 2016

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge